**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| VIRTAMOVE, CORP.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ORACLE CORP.,<br><br>　　　　Defendant. | Case No. 1:25-cv-1601-ADA<br><br>**JURY TRIAL DEMANDED** |
| VIRTAMOVE, CORP.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ORACLE CORP.,<br><br>　　　　Defendant. | Case No. 1:25-cv-1651-ADA<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT ORACLE CORPORATION'S MOTION
TO CONSOLIDATE AND FOR A LIMITED STAY OF FIRST-FILED CASE**

I.   **INTRODUCTION**

Defendant Oracle Corporation ("Oracle") moves to consolidate the above-captioned cases: *VirtaMove, Corp. v. Oracle Corp.*, No. 1:25-cv-1601-ADA ("*VM 1*") and *VirtaMove, Corp. v. Oracle Corp.*, No. 1:25-cv-1651-ADA ("*VM 2*"). The cases involve the same parties, patents from the same patent family, and almost entirely overlapping accused products that use the same accused technology. Once consolidated, Oracle seeks a limited stay of *VM 1* until after the *Markman* hearing in *VM 2* so the cases can proceed through discovery and trial together.

In December 2024, Plaintiff VirtaMove, Corp. ("VM") filed *VM 1* in which it asserts U.S. Patent No. 7,519,814 (the "'814 patent"). Then, in late August 2025, it filed *VM 2* in which it asserts U.S. Patent No. 7,774,762 (the "'762 patent") against the same core set of Oracle products as *VM 1*. VM filed these cases as separate actions even though it unquestionably could have asserted the '762 patent in *VM 1* eight months earlier. We know this because VM's complaints in both cases rely on virtually identical evidence to allege infringement.

By filing *VM 2* separately, VM is seeking to have two bites at the apple: two chances to persuade two different juries to render two separate damages verdicts on overlapping Oracle products and related patents based on arguments about the operation of the same technology. Two trials on virtually the same issues would be a waste of judicial resources and raises the possibility of inconsistent results on the same or similar issues. The Court should consolidate the two cases, stay *VM 1* until *VM 2* catches up, and allow the cases to proceed to trial together in a single, efficient case.

II.   **BACKGROUND**

VM filed *VM 1* against Oracle on December 20, 2024, Dkt. 1, and filed an amended complaint on April 11, 2025. *VM 1,* Dkt. 21. In *VM 1*, VM accused Oracle Cloud Infrastructure

("OCI"), Oracle Kubernetes Engine ("OKE"), and Oracle Cloud Infrastructure Container Registry ("OCIR") of infringing two related patents: the '814 patent and 7,784,058 (the '058 patent). *See, e.g.*, Ex. 1 at 46-90. VM's infringement contentions focus on Oracle's alleged use of open-source containerization software, Docker and Kubernetes. *Id*. The *Markman* hearing in *VM 1* occurred on October 6, 2025, and merits discovery is just now opening.

*VM 1* against Oracle mirrored five other lawsuits in which VM asserted the same two patents against companies based on their use of Docker and Kubernetes, including cases against HPE and IBM that were consolidated. No. 2:24-cv-00093 (E.D. Tex. Feb. 9, 2024) (the "HPE/IBM Case"). In the HPE/IBM Case, Judge Gilstrap found a term in the asserted '058 patent indefinite. *Id*., Dkt. 222 (July 23, 2025 Claim Construction Order). On August 25, 2025, VM voluntarily dismissed the '058 patent from *VM 1*. *VM 1,* Dkt. 48.

On August 27, 2025, two days after dismissing the '058 patent from *VM 1*, VM filed its complaint in *VM 2* asserting the '762 patent against Oracle. The parties filed a joint motion to transfer, and the case has now been transferred to the Austin Division so both *VM 1* and *VM 2* are in the same court. There is extensive overlap between *VM 1* and *VM 2*.

<u>*First*</u>, *VM 2* involves the exact same parties as *VM 1*: VM and Oracle.

<u>*Second*</u>, the patents are related and highly overlapping. The '762 patent is a continuation-in-part of the application that led to the '814 patent and the now-dismissed '058 patent asserted in *VM 1*, with the same first-named inventor (Donn Rochette) and the same original and successor assignees (Trigence Corp. and Appzero Software Corp.). *See VM 2*, Dkt. 1 ¶ 11. The claimed technologies are substantially similar. The claims of the '762 patent use the term "capsule" rather than "container" in the '814 patent, but the terms share the exact same definition. *Compare* '814 patent 2:23-42, with '762 patent 4:51-67. Also, the figures and specification of the '762 patent

show that it uses the term "capsule" and "container" synonymously—while the specification of the '762 patent refers to "capsule" or "application capsules," the figures use the term "container" or "application containers." *Id.* 6:14-19, 12:21-22, 13:4-7, 13:56-60, 14:13-15, Figs., 1a, 6, 8, 13; *see also id.* 8:32-34, Fig. 10 (specification refers to a "capsule runtime" while Figure 10 refers to the same element as a "container runtime"); *id.* 14:54-57 ("invention has been described in a preferred embodiment wherein **containerization or encapsulation** of files is required to isolate files") (emphasis added). The patents cover overlapping technology.

***Third***, VM accuses the same Oracle products in both cases (OCI, OKE, and OCIR) and adds just one additional product in *VM 2*--Oracle Cloud Native Environment ("OCNE"). *VM 2,* Dkt. 1 at 5. The claim chart attached to the complaint in *VM 2* significantly overlaps with the infringement contentions in *VM 1* and does not distinguish between or among these accused products. Indeed, the *VM 2* chart lumps OCNE together with OCI, OKE, and OCIR and focuses on the use of open-source containerization software Docker and Kubernetes, just like *VM 1*. *VM 2*, Dkt. 1-2.

***Fourth***, given the significant overlap between the two patents, technology, and accused products, the documents, fact witnesses, and expert witnesses upon which Oracle is likely to rely for purposes of prior art and invalidity will likewise be highly overlapping. *See generally* Dkt. 25 (describing technology and prior art). For example, "Solaris" is a prior art system that introduced "software containers" in version 9 of the operating system in 2002, called "Zones" in version 10. *Id.* at 4. Because the patents and infringement theories in *VM 1* and *VM 2* are based on containerization technology, relevant prior art in the two cases is likely to overlap almost entirely.

***Finally***, the '762 patent is not a new patent, nor is this the first case in which VM asserted the '762 patent. Indeed, the '762 patent issued more than a decade ago, on August 10, 2010, long

before VM filed its first case against Oracle. '762 patent, cover. Furthermore, VM filed a case asserting the '762 patent against Microsoft on May 30, 2025, and against IBM on June 10, 2025, similarly accusing Microsoft's and IBM's use of open-source Docker and Kubernetes containerization software. No. 7:25-cv-00254-ADA (W.D. Tex), Dkt. 1-2; No. 2:25-cv-00619-JRG (E.D. Tex.), Dkt. 1-4.

### III. LEGAL STANDARD

***Consolidation***: Under Federal Rule of Civil Procedure 42(a), a court may consolidate two actions involving common questions of law or fact on motion or *sua sponte*. Rule 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the action; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). "In [the Fifth] Circuit, district judges have been 'urged to make good use of Rule 42(a) . . . in order to expedite the trial and eliminate unnecessary repetition and confusion.'" *See Gentry v. Smith*, 487 F.2d 571, 581 (5th Cir. 1973) (citation omitted); *see also In re Air Crash Disaster*, 549 F.2d 1006, 1013 (5th Cir. 1977) (discretion to consolidate is a "broad grant of authority" to be "applied liberally").

In deciding whether to consolidate, courts in this district generally consider factors such as "whether the actions are pending before the same court; whether the actions involve a common party; any risk of prejudice or confusion from consolidation; the risk of inconsistent adjudications of common factual or legal questions if the matters are tried separately; whether consolidation will reduce the time and cost of trying the cases separately; and whether the cases are at the same stage of preparation for trial." *Arnold & Co., LLC v. David K. Young Consulting, LLC*, 2013 WL 1411773, at *2 (W.D. Tex. Apr. 8, 2013) (collecting cases). Consolidation "enhance[s] efficiency and avoid[s] the substantial danger of inconsistent adjudications." *Bristol-Myers Squibb Co. v. Safety Nat. Cas. Corp.*, 43 F. Supp. 2d 734, 735 (E.D. Tex. 1999).

*Stay*: District courts have the inherent power to control their own dockets, including the broad discretion to stay proceedings before them. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). In evaluating a motion to stay in light of another legal proceeding, courts in the Fifth Circuit generally consider the following factors: "(1) the potential prejudice to the non-moving party; (2) the hardship and inequity to the moving party if the action is not stayed as well as the (3) judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated." *Sparling v. Doyle*, 2014 WL 12489985, at *2 (W.D. Tex. Mar. 3, 2014).

IV. **ARGUMENT**

    A. **Common Questions Of Fact And Law Warrant Consolidation**

As detailed above, the two cases at issue involve related patents (the '762 patent in *VM 2* is a continuation-in-part of the '814 patent in *VM 1*) that claim overlapping subject matter. The patents are asserted against overlapping Oracle products and services based on their use of the same underlying open-source technologies. The patents had the same assignees and the same first-named inventor. The threshold requirement for the Court to exercise its broad discretion to consolidate the cases is met, and the factors weigh in favor of doing so.

        1. **The Two Actions Involve the Same Parties in the Same Court**

The cases involve not only common parties, but identical parties (VM and Oracle), who are represented by the same counsel in both cases. *See, e.g.*, *Noble Cap. Fund Mgmt., LLC v. US Cap. Partners, Inc.*, 2024 WL 5036605, at *1 (W.D. Tex. July 22, 2024) (granting a motion to consolidate, noting in particular the "unnecessary cost and delay for the *same counsel* and *same related parties* to re-litigate similar issues" in separate cases) (emphasis added). The two actions are pending before the same judge and in the same court. *VM 2*, Dkt. 13. These two factors weigh in favor of consolidation.

2.   **There Is Risk of Inconsistent Adjudications If the Cases Are Tried Separately**

Given the overlap in the subject matter of the patents, there is substantial risk of inconsistent adjudications of common issues if the two cases are tried separately, such as inconsistent determinations of infringement by the underlying open-source technologies, inconsistent damages awards, or potential inconsistent findings regarding validity and prior art. *See, e.g.*, *Affinity Labs of Tex., LLC v. Blackberry Ltd.*, 2014 WL 12551206, at *3 (W.D. Tex. Apr. 4, 2014) (risk of inconsistent or competing jury findings on the same issues an important consideration when evaluating consolidation). For example, the patents cover containerization technology using similar terms with similar claim scope. Thus, different juries could reach different verdicts based on the same technology and overlapping claims. There is also a risk that one jury could find some claims anticipated by prior art while another jury finds the same prior art not to anticipate overlapping claim elements. Such results risk not only extensive post-trial litigation but also leaving the public at a loss as to whether the use of these open-source technologies could give rise to an infringement claim in the future. Consolidating the cases would avoid the risk of two juries coming to inconsistent verdicts.

3.   **Consolidation Would Promote Efficiencies**

Consolidation will greatly promote efficiencies given the overlap between the cases. *See, e.g.*, *3M Co. v. Moldex-Metric, Inc.*, 2006 WL 3759758, at *2 (D. Minn. Dec. 21, 2006) (finding that "the savings of time and effort resulting from consolidation of these actions outweighs any inconvenience, delay, or expense that it might cause" when the two actions involve same accused products, related patents, overlapping damages analyses, and same likely set of fact and expert witnesses, even when the second-filed case was filed nearly three years after the first); *see also* Section II, *supra*. The evidence—including documents, source code, prior art, and witness

testimony—in *VM 1* and *VM 2* will largely overlap. See § II. Trial would be significantly less burdensome in a single consolidated case because common witnesses could be called in once (instead of twice for two different trials). This is particularly important for third-party witnesses with relevant knowledge of Docker and Kubernetes, and third-party witnesses with knowledge of prior art. Moreover, consolidation will reduce the burden on the Court and the District because a single jury could be empaneled in a consolidated two-patent case.

### 4.     Consolidation Will Not Result in Prejudice or Confusion

There is little to no risk of prejudice or confusion. VM filed *VM 2* less than two months ago, and *VM 1* is still at an early stage. Discovery in *VM 1* is in its infancy, having opened just last week. *VM 1* involves only one patent; consolidating it with *VM 2* merely adds one patent from the same family. *See, e.g.*, *Hillman Grp., Inc. v. KeyMe, LLC*, 2020 WL 6938441, at *2–3 (E.D. Tex. Oct. 23, 2020) (consolidating when the patents all "issued from the same family," over non-movant's arguments that "the presence of other patents 'separates the paths' of the two cases").

Although consolidation would delay the *VM 1* proceedings, the delay and any purported prejudice would be the result of VM's own actions. VM could have asserted the '762 patent in *VM 1* along with the related '814 patent back in December 2024, but chose not to do so. Or it could have filed *VM 2* months earlier when the cases would have been considered "CRSR Related Cases" under this Court's Order Governing Proceedings in Patent Cases ("OGP"). *See* OGP at 10–11. The patent issued more than a decade ago, VM knew of the family of patents in its portfolio, it had already developed its (nearly identical) infringement theory with respect to Oracle's products, and it was preparing to litigate the '762 patent against other defendants. Indeed, VM asserted the '762 patent against Microsoft for its use of the same open source technology (Docker and Kubernetes) back in May. Thus, any delay or purported prejudice is self-inflicted, as it is VM who delayed in filing *VM 2*. *See VirtualAgility, Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318–19

(Fed. Cir. 2014) (finding no undue prejudice in part because the plaintiff had delayed nearly a year before filing suit). In contrast, as discussed below, allowing VM two bites at the apple would prejudice Oracle. See Section IV.B.3, *infra*.

* * * * *

The factors, individually and on balance, weigh in favor of consolidation.

### B. Once Consolidated, The Court Should Temporarily Stay Deadlines In *VM 1* Until *VM 2* Enters Discovery.

Upon consolidation, Oracle seeks a limited stay of deadlines in *VM 1*, until *VM 2* catches up and discovery opens in or around May 2026 pursuant to the OGP, at which time the consolidated cases would move forward together. Such a limited stay is warranted under the three factors.

#### 1. A Limited Stay Would Not Unduly Prejudice VirtaMove

The first factor, prejudice to the non-moving party, favors a stay because a stay would not unduly prejudice VM for all the same reasons discussed in Section IV.A.3, *supra*. Oracle proposes a limited stay of approximately seven months that is tailored to ensure that the two overlapping cases have coordinated timelines after the *Markman* hearing in *VM 2*. Moreover, such a limited stay will not give Oracle any tactical advantage in either pending case, and there is no indication that VM will lose any of its witnesses or suffer any tactical disadvantage should *VM 1* be temporarily stayed. *See VirtualAgility*, 759 F.3d at 1319 (finding no tactical advantage for movants for the stay when the movants sought a stay promptly and there was no evidence that the movant sought a stay with a "dilatory motive."). This factor favors a stay.

#### 2. Substantial Judicial Resources Will Be Saved, and the Stay Will Likely Result in Simplifying the Issues Before the Court

The third factor favors granting a stay because staying *VM 1* while *VM 2* catches up for post-*Markman* discovery will save substantial judicial resources. Discovery in the two cases will

be nearly entirely cumulative. As explained in Section IV.A, *supra*, *VM 2* is between identical parties, represented by identical counsel, concerning related patents, asserted against overlapping and nearly identical Oracle products and services. The Court's most efficient course of action therefore is to stay *VM 1* so that the two consolidated actions may proceed through the litigation process post-*Markman* together. That way, the Court avoids duplicative discovery motions, largely duplicative dispositive motions, and duplicative trials.

### 3. Oracle Would Be Prejudiced Absent a Limited Stay

Finally, prejudice to the moving party favors granting a stay. As explained above, Oracle should not be compelled try cases on overlapping products, risking separate juries awarding separate damages on the same products, merely because VM chose to delay in asserting a family-member patent in a separate action. VM could have asserted the '762 patent against Oracle in *VM 1*. Instead, VM split up its patents and held off filing the second-filed case for over eight months. VM's gamesmanship should not be rewarded.

### V. CONCLUSION

Oracle respectfully requests that the Court consolidate the two actions for all purposes through trial. Oracle further requests a limited stay of *VM 1* until after the *Markman* hearing in *VM 2*, so that merits discovery, pretrial, and trial can proceed on a single track.

Dated: October 16, 2025                      Respectfully submitted,

                                             */s/ Darryl J. Adams*
                                             _____

                                             Darryl J. Adams (TX Bar No. 00796101)
                                             **Slayden Grubert Beard PLLC**
                                             401 Congress Avenue, Suite 1650
                                             Austin, Texas 78701
                                             dadams@sgbfirm.com
                                             Tel: 512-402-3550

                                             *Attorney for Defendant Oracle Corp.*

## CERTIFICATE OF CONFERENCE

I hereby certify that in accordance with Local Rule CV-7(g), I conferred with Plaintiff's counsel regarding the relief sought in Defendant Oracle Corporation's Motion to Consolidate and for a Limited Stay of First-Filed Case. Plaintiff's counsel confirmed that Plaintiff opposes this request for consolidation and stay.

                                              */s/ Darryl J. Adams*
                                              Darryl J. Adams

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 16, 2025, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system.

                                              */s/ Darryl J. Adams*
                                              Darryl J. Adams